period of twenty-one years, the land cannot now be charged with the payment of the legacy:

"It is very clear, therefore, that if the person claiming payment of such charge or lien is able to show neither a claim or demand of payment made by him on the owner of such real estate, nor a payment upon or an acknowledgment of the existence of such lien or charge by such owner within the statutory period, then the act operates to raise a conclusive presumption of the release or extinguishment of the demand, and declares that it shall thereafter be irrecoverable": Wingett's App., 122 Pa. 486, 493.

The acknowledgment must be made by the owner of the premises: Barber v. Mullen, 176 Pa. 331; and see Wallace v. Fourth U. P. Church, 152 Pa. 258. It is not necessary to plead the Act of 1855: Wingett's App., supra; DeHaven's Est., 25 Pa. Superior Ct. 507.

For the reasons above stated the decree of the court below is reversed and the petition is dismissed at the cost of the appellee.

---

# Pittsburgh, Appellant, v. Equitable Gas Company.

*Contracts—Municipalities—Ordinances — Gas companies — Free gas—Threat to stop supply—Bill in equity—Dismissal—Franchises —Construction.*

A municipal ordinance granted a franchise to lay gas pipes in the streets and alleys of a city and provided that "in consideration of the privileges granted in this ordinance the said (grantee) and his assigns agree to furnish the City of Pittsburgh free of cost and expense all the natural gas necessary for fuel for the buildings of the police, fire, markets and city property departments as long as said pipes shall be in use." Subsequently the city erected other buildings which could not be classified with those that were under the control of the four departments at the time of the passage of the ordinance and contended that it was entitled to free gas for the use of such buildings. The successors of the original grantee of the franchise threatened to shut off the supply of gas to said buildings

unless the city would pay for it.  The city brought a bill in equity to enjoin the defendant from shutting off the supply of gas from such buildings.  *Held,* the lower court properly refused the injunction.

Argued Oct. 23, 1916.  Appeal, No. 182, Oct. T., 1916, by plaintiff, from decree of C. P. Allegheny Co., July T., 1916, No. 1174, refusing an injunction, in case of City of Pittsburgh v. Equitable Gas Company.  Before BROWN, C. J., MESTREZAT, POTTER, MOSCHZISKER and WALLING JJ.  Affirmed.

Bill in equity for an injunction.

EVANS, J., filed the following findings of fact and conclusions of law:

### FINDINGS OF FACT.

First.  By an ordinance approved the 13th day of November, 1884, the City of Pittsburgh granted to George Westinghouse and his assigns the right to occupy the streets and alleys of the City of Pittsburgh for the purpose of laying gas pipes therein for the purpose of transporting natural gas.

Second.  The fourth section of that ordinance provided: "That in consideration of the privileges granted in this ordinance the said George Westinghouse, Jr., and his assigns agree to furnish to the City of Pittsburgh, free of cost and expense, all the natural gas necessary for fuel for the buildings of the police, fire, markets and city property departments so long as said pipes shall be in use, the City of Pittsburgh to make all necessary connections at its own proper cost and expense."

Third.  The administration of the City of Pittsburgh was under the control of council and administered by that body through its various committees, except as to the fire department, which was administered by a commission created by and under the control of council; and of these committees were the police committee, the markets committee, and the city property committee.

Fourth. The markets committee had under its control all the markets and market houses of the City of Pittsburgh.

Fifth. The fire department had under its control all the engine houses and any other building necessary for the operation of the fire department.

Sixth. The police committee had lost control of the buildings necessary for the operation of the police department by the ordinance of March 12, 1884, the control going to the city property committee; but, in fact, the police committee still exercised the control over the station houses, and the only public building that the city property committee controlled was the city hall.

Seventh. The board of health of the City of Pittsburgh owned the property which is now known as the Municipal Hospital, which it had purchased from William Ward and others by deed dated April 11, 1874.

Eighth. The board of health of the City of Pittsburgh was a body corporate erected by the Act of April 8, 1851, P. L. 587, with power to take and hold all the real estate necessary for the purposes and objects of the corporation.

Ninth. The City of Pittsburgh is not entitled to any gas free of cost for lighting purposes.

Tenth. The City of Pittsburgh has heretofore paid for the gas used for fuel in the buildings and at the places designated in Exhibit "A," attached to defendant's answer.

### CONCLUSIONS OF LAW.

First. The true meaning of the fourth section of the ordinance of November 13, 1884, granting to George Westinghouse and his assigns the right to occupy the streets and alleys of the City of Pittsburgh for the purpose of laying gas pipes and transporting natural gas is that the buildings of the police department and under the control of the police committee, of the fire department and under the control of the fire commission, of the

markets department and under the control of the market committee, and of the city property department and under the control of the city property committee, shall be furnished gas for fuel free of cost and expense.

Second. Only such additional buildings as come within the class of buildings of the police, fire, markets and city property departments in 1884 are included in the provision of the fourth section of the Westinghouse ordinance, for the use of which the city is entitled to gas free of cost.

Third. By the terms of the ordinance of November 13, 1884, the gas company is not bound to furnish gas free of cost to the buildings designated in the tenth finding of fact.

Fourth. The injunction should be dissolved so far as it affects the right of the defendant to turn off the gas used for light in all the buildings, and so far as it affects the right of the defendant to turn off the gas used for fuel or light in the buildings designated in the tenth finding of fact.

The court on final hearing dissolved a preliminary injunction which it had granted in so far as it affected certain buildings. Plaintiff appealed.

*Errors assigned* were in dismissing exceptions to findings of fact and law of the trial judge and the decree of the court.

*Charles A. O'Brien,* with him *B. J. Jarrett* and *Hermann F. Ruoff,* for appellant.

*Edwin W. Smith,* with him *David A. Reed* and *Reed, Smith, Shaw & Beal,* for appellee.

PER CURIAM, February 19, 1917:

The decree in this case is affirmed on the findings of fact and legal conclusions of the learned chancellor below.

Decree affirmed at appellant's costs.